May it please the Court, my name is Abby Goncharski. I'm from the law firm of Lewis and Roca. I appear today on behalf of the petitioner Jaib Singh Ray. I'd like to reserve two minutes of my time for rebuttal. Your Honor, this case seeks justice and the fair treatment of Mr. Ray, a Punjabi Sikh who sought asylum in the United States because he was beaten and tortured in his native India. Despite his testimony, the immigration judge denied his application for asylum. And even though Mr. Ray provided the reasons for his appeal and his notice of appeal, the Board of Immigration Appeals summarily dismissed it. Your Honors, there are two separate but related questions before this Court, each of which presents a question of fairness and equity. The first question is whether Mr. Ray has been denied his Fifth Amendment procedural due process rights because the Board summarily dismissed his appeal due to his attorney's failure to submit a brief. The second question is whether the Board thereafter abused its discretion by holding that Mr. Ray's motion to reopen was time and number barred. Because the answer to both of these questions is yes, Mr. Ray asked this Court to find that the Board abused its discretion, reverse and remand the Board's decision, and order the Board to reopen the matter and decide on its merits. The Board denied Mr. Ray his Fifth Amendment procedural due process rights. Had the Board properly considered the merits of Mr. Ray's timely filed appeal of the judge's deportation order, the Board would have had no choice but to reverse the judge's decision because it was not supported by substantial evidence. Substantial evidence is that evidence that is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The immigration judge's decision in this case was not based on substantial evidence. The Board abused its discretion by summarily dismissing Mr. Ray's appeal because his attorney had not filed a brief in support thereof. All right. Well, they claim that he was not represented at the time. So what in the record demonstrates that they were informed at the time they made the first reopening decision that he was in fact represented at the time? There's no way to look at it besides that Mr. Ray was represented at the time because he did not read or speak English, and he could not have supported it. So did he inform the Board when he filed his motion to reopen the first time? When he filed his first motion, he did. He submitted an affidavit that's in the administrative record at 108 stating that he did not speak or read English. But did it say that he was represented at the time? It did, to my knowledge, yes. I see. That his attorney, Mr. Awalia, I think I'm pronouncing that correctly. Yes. Was supposed to file a brief, and he had checked that box. I see. Okay. He did. I see it. The other point that I'd like to make on this is that the regulation that the Board followed that allows summary dismissals under this situation says that either the petitioner may provide the reasons for the appeal in their notice of appeal, or the Board may summarily dismiss if that box is checked that says that a brief will follow and no brief is filed. Essentially, Mr. Ray has now been penalized because that box was checked. Mr. Ray did provide reasons for his appeal on his notice of appeal. Had he not checked that box, presumably the Board of Immigration Appeals would have conducted an adequate review of the appeal at that time on its merits. That box being checked was the beginning of many problems for Mr. Ray. Mr. Ray was a victim of ineffective assistance of counsel, and he should not be penalized for what turned out to be a poor choice of several attorneys. Mr. Ray's attorneys were ethically and legally obliged to properly represent him in his legal proceedings. Because his attorneys failed to fulfill their duties to him, they prevented him from having the Board properly review his appeal. As this Court has held, ineffective assistance of counsel in a deportation proceeding is a denial of due process under the Fifth Amendment if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case. That is the case here. In this case, it's a bit unusual in that he apparently had three incompetent counsel. It is, Your Honor. It's very distressing and was many, much of the reason that Mr. Ray has now been denied his Fifth Amendment procedural due process rights rests with those attorneys. Our Court has been struggling with this problem for some time. We find many practitioners in this area are not providing adequate representation, which is very, very sad. But after three counsel, you think that we still grant relief? I do, Your Honor. What we're asking for here is that you send this back to the Board with instructions that the Board review the decision of the immigration judge on its merits. The Board's decision was a summary decision. They didn't discuss the merits of Mr. Ray's points. They didn't discuss his testimony or whether there was substantial evidence. Actually, technically speaking, at this point, wouldn't we simply remand or reverse the refusal to reopen and just have them reopen, and that would be period the end? Your Honor, yes, although I would add in a comma with orders as to what to do. So you would have them consider the ineffective assistance issues, which is what they've been refusing to consider. Exactly, Your Honor. The ineffective assistance issues are intertwined with the fact that from the very beginning, the Board has not considered the merits of the appeal. Because of the ineffective assistance of counsel, the issue has been compounded for several years now. If we were to remand and have them consider the ineffective assistance claim and its effect on this underlying claim, and then if it found that it had affected his opinion, would you ask the IJ to then review the IJ's opinion? Yes, Your Honor. What we're asking for here is that this goes back to the Board with instructions to consider the merits of the appeal. But those are two different things. You're saying two different things. So you need to come down one way or the other. Are you asking for a remand to have them consider the ineffective assistance? What we have with regard to the ineffective assistance is a set of affidavits at this point. I mean, who knows if it's true or not. So theoretically, if they prefer, they might be able to have a hearing on the ineffective assistance issue to decide whether to reopen. And then if they decided to credit what he said and that there was an ineffective assistance, then they could get to the merits. But is there a theory in which we could order them to directly judge for the merits and not first consider the ineffectiveness issue? Your Honor, you could order them to do that on the basis that the record is fairly clear at this point that there has been ineffective assistance of counsel throughout. And you could make the decision that the ineffective assistance of counsel was sufficiently pervasive as to send it back to the Board for a decision on the merits. But you don't need to do that. You can send it back, as you and Judge Fletcher have pointed out, and send it back for either a hearing or simply a review of the ineffective assistance of counsel and whether that has happened and then instructions that if the Board does find there has been an effective assistance, then to move to that second element that we've been discussing. The second issue before this Court is whether the Board abused its discretion by holding that Mr. Wray's motions to reopen were untimely and number barred. And as this Court has held on several occasions, the number and time restrictions may be equitably told under certain circumstances. This is absolutely one of those circumstances. Mr. Wray has acted with due diligence throughout these proceedings. Whenever something happens, he went out, he found a new attorney, he hired them, he paid them thousands of dollars at this point, and he continues to have been left without any assistance. The hard question is the timing of the last motion. Assuming that we could have equitable tolling of the number, but the timing was rather late. So how would you explain that? The timing, I assume that you're referring, and correct me if I'm wrong, to the fact that the denial of the first motion occurred in September of 2002. This motion was filed in February of 2003. That's not a lot of time when you consider that Mr. Wray was quite late. And what is the explanation for the late? It should have been filed at most 90 days after the first motion, assuming that you could file a second one. Yes, Your Honor. Mr. Wray had hired a third attorney during that time, a Mr. Guajardo. That's in the record at page 21, and Mr. Guajardo unfortunately did nothing. As soon as Mr. Wray found that out, Mr. Wray took the matter into his own hands. And then from thenceforward, how about that time, from the time that he hired a new lawyer? From the time that he hired that new lawyer, that lawyer has done nothing to this point. Mr. Wray took the matter into his own hands. The motion that we are here on is a motion filed pro se by Mr. Wray. And until the Court appointed me as pro bono counsel, he was representing himself pro se. I see. Thank you. With the Court's permission, I'd like to reserve some time. Thank you. Thank you. Good morning. My name is Kristen Cabral, and I represent the respondent in this matter. Petitioner claims that he suffered a due process violation based on his attorney's actions or non-actions. However, there's no due process violation in this case because Petitioner never showed the Board how he was prejudiced by his counsel's performance. In order to establish a due process violation, he needs to show that his case was prejudiced, in essence that it affected the outcome of the proceedings. Sorry. I thought we had case law that says that when the violation is, when the ineffective assistance is simply not filing an appeal, that the showing that has to be made at that point is minimal, if any, because unlike the circumstance in which something was badly done, that's one thing. But here it wasn't done at all. Well, the genesis of his claim is that his original counsel, Mr. Alia, if I get that correctly, failed to file a brief, and that supposedly the Board then summarily dismissed his appeal of the merits of the I.J.'s decision based upon failure to file a brief. That is not exactly what happened. If one looks on page 117 of the record at the Board's very first decision, the Board made an additional holding, finding, and I read the second-to-last sentence on that first Board order. Moreover, upon review of the record, we are not persuaded that the immigration judge's ultimate resolution of this case was in error. So the Board, upon review of the record, found that on the merits, the I.J.'s holding that in essence he was found adversely credible and therefore could not establish his burden of proof for asylum. That, therefore, Petitioner here never once in his motion to the BIA that's at issue with this petition for review and even his earlier motion never argued to the Board that the I.J.'s adverse credibility determination was wrong. In essence he argued at some length that it was wrong. Did he not argue at some length that it was wrong, Mr. Ray? No. He never argued that in either his notice of appeal, his first motion to the Board or the second motion to the Board, that the I.J.'s adverse credibility determination was incorrect and was wrong, and that's the crux of this suit. Let me ask this. In his notice that he was appealing, he listed certain things that he thought was wrong with the I.J.'s opinion. He did not mention credibility at that point. Is that correct? That's correct. That's correct. So when the Board reviewed it, would they have looked beyond those points? Well, when the Board reviewed it, they reviewed it based on the full record. I mean, clearly states in the Board's first decision that upon review of the record we are not persuaded that the immigration's ultimate resolution of this case, the ultimate resolution being that he was found adversely credible when it came to his asylum claim, was in error. So we don't really ñ it's uncomfortable because that issue was not raised by this first counsel in listing, so would the Board go beyond those contentions? Well, I believe when it gave it a full record review, that would in essence include looking at all the reasons that the I.J. determined that he did not have a cognizable asylum claim, and that would be credibility. And in this case, basically what the Petitioner's ultimately looking for is for a BIA review of his asylum denial with the benefit of a brief. But as Petitioner himself advocates, the BIA can review based on the notice of appeal alone, and that's exactly what it did in this case. But even though there's statements made that ñ the moreover statement, how can there really be a meaningful review unless the arguments are presented on behalf of this individual? I mean, it's easy to review a record, but unless you know what the arguments are, and here there was no brief to make the arguments. True, true. Kind of a stacked deck. Right. But this Court has held that when there is a notice of appeal that's beyond the bare bones, and this was a notice of appeal that was beyond the bare bones. It just did not simply state that, you know, the IJ is wrong. It actually did, you know, give some reason, so it didn't zero in on, you know, what was the key reason for the IJ's denial, and that's adverse credibility. Right. That still ñ I think there was enough there for the Board to have a review. Well, you're actually taking a funny position, though, because your position is that the Board, of course, denied it on the basis that there wasn't enough there, principally. And then secondarily said that they did an initial search as a merit. They did not purport to have done a review based on a notice of appeal because they said that because there was no brief, this is why they were dismissing it. So there's some ñ there's a bit of tension there. Correct. But, again, this is a case where, again, I ask Petitioner, where is the prejudice? Unlike the other ineffective assistance of counsel and equitable tolling cases that this Court has decided, like Tiberia, Rodriguez-Larisse, where the attorneys or the non-attorneys didn't even get a chance to see that those aliens had their applications for relief considered, that this is a case where the Petitioner had a full and fair hearing on the merits, that had a full record review by the Board of Immigration Appeals. So at the end of the day, I still question where is the prejudice that would have resulted in a violation of due process. And the other thing that's somewhat disturbing, of course, is that while you're ñ what you're saying has some interest, the Board's never said that. I mean, the Board has continually sort of ignored his successive ineffective assistance claims. I don't think the Board has necessarily ignored it. Certainly in the Board's second decision, which, again, was never petitioned to this Court, it noted that it found that the Petitioner did not, you know, exercise his due diligence in this case, and that ñ I mean, for example, in the first motion to reopen, they denied relief because although the Respondent blames an attorney for not filing a brief, he appeared pro se. But he explained that, and there was no response to the explanation. They just ignored it. And then ñ Well, for one, it would have behooved him to have at least tried to meet the Lizada factors in that first motion as well as the second motion. Neither motion comes close to meeting Lizada and, therefore, giving the Board the information it needs in order to decide whether or not there's truly ineffective assistance at counsel. But they didn't address it. What's troubling me is you're saying a lot of intelligent things about why they might have denied it, but none of them appear in the orders denying it. So you're ñ and don't we need the Board's view about why it denied it rather than the Board's? Well, the Board's ñ number one, they have the regulations noting the time limit for a motion to reconsider, which is 30 days, noting the time limit for a motion to reopen, which is 90 days, and that there should only be one. So there's also numerical limitation. And that, you know, once they, you know, find that the motion does not meet those regulations, and the Petitioner did not, you know, again, come anywhere close to meeting Lizada in either of these two motions, the motion ñ the Board decides what's before it. So there's no reason why the Board necessarily had to address it. It found that it would ñ that these motions were ñ in particular, the motion that was petitioned for review before this Court, that it, you know, was in violation of the regulations. For instance, the motion ñ Excuse me. Let me ask again. Did the Board ever deny any of these motions for failure to comply with Lizada? No. They didn't mention. Okay. But that's because the motions didn't even come close to meeting Lizada, that the Board just decides what it has before it. And if it doesn't have a motion that tells them enough about what went on. So for instance, the second motion that was filed, there is no affidavit, there's no description of the agreement we had with Mr. Guadardo, there's no proof that counsel was ever informed of the complaints he made against the California bar. The first motion, there's no bar complaint ever filed against the first attorney who's Aluwalia ñ I'm sorry, I pronounced that wrong again ñ Aluwalia, no proof that he ever informed counsel, and no agreement with what he had with ñ no explanation of the agreement he had with that first attorney. There was only a declaration. I also want to address the concern that Judge Brezon brought up about the timing of the last motion, and that even with Petitioner having exercised or claimed to have exercised due diligence, it's still late. I would ñ I would agree with that. To the extent that he decided that he did not like the representation anymore of his second attorney, he actually hired the third attorney, Mr. Guadardo, about two weeks before the second ñ the Board came down with a second decision which denied the first motion to reopen. And there's no indication that within either 30 days of hiring Mr. Guadardo or 90 days that he then filed his second motion with the Board. And that's because Mr. Guadardo, who has been disbarred by this Court, and I think disbarred by California, and perhaps is the subject of criminal complaints for should be, did not file anything. And that's a totally credible story because it's the way he's behaved many, many times. Right. But we also don't have any indication in this record as to the date of when Petitioner discovered what is the alleged malfeasance of Mr. Guadardo, and that in so discovering that alleged malfeasance that he then filed his pro se motion within 30 days of him discovering that, or within 90 days of him discovering that for the sake of a motion to reopen. This poor Petitioner had so many problems. And Mr. Guadardo said to him, you know, I know the judges. I've got contacts. I'll take care of it. And it's just a very sick and sorry record. I have no argument against that element. Thank you very much. You're welcome. I really appreciate your record. Thank you.  I'm going to turn it back to you, and I'll let you have the floor.    I'm going to turn it back to Ms. Roberts. You can have a minute or so. Thank you. Thank you, Your Honor. Your Honor, the quote by opposing counsel of the Board's review of the record is the only mention of any review that the Board has conducted. The language is simply boilerplate language, and that's in violation of this Court's jurisprudence. That's clear from the case law. It was not a meaningful review. This Court cannot look at what the Board did and say whether the Board conducted an adequate review or not. The Board needs to put that into writing so that this Court can look at whether the Board adequately reviewed the circumstances before it. Opposing counsel also claims that Mr. Ray had a full and fair hearing on the merits. From the transcript, that's clear that it was not the case. The immigration judge lacked substantial evidence to support her decisions, and that's discussed at length in our brief, and so I'll leave that. Would you address the prejudice issue briefly? The question. Okay. Will you address briefly the prejudice issue, that is, whether there has been an adequate allegation of prejudice? The allegation of prejudice goes across many levels because of the way that this case has transpired. Ultimately, prejudice has to suggest that he had at least a prayer of succeeding somewhere along the way. That's true, and based on his testimony before the immigration judge, he did have a Mr. Ray did testify that he had been beaten and tortured and that his family had been threatened that if he returns, they will take the police will take him back into custody and that he will be beaten and tortured again. In addition, his father was taken after he left. His father returned home one evening, had a heart attack that night. Yes, but the problem was actually I didn't believe him, so the question is what points can or will or would be made with regard to the credibility determination? The credibility determination that the immigration judge made lacks substantial evidence because it doesn't show a reasonable basis for her decision. For example, her discussion of the stitches, that at one point he testified that he woke up and he had stitches and later in his testimony he testified that he had left the police station and had gone and gotten stitches. The two are not irreconcilable. It's clear from the testimony and from the transcript that Mr. Ray and the interpreter were having difficulty conveying Mr. Ray's testimony to the immigration judge. The translator himself didn't seem that he spoke English fluently. On that basis, that there was some sort of difficulty reconciling the testimony makes sense to me, that Mr. Ray did wake up and he got stitches, that there was a lag in between when he was released from prison because his family had posted the ransom that was requested and that he then went to a doctor who gave him stitches makes sense to me, and I think that a judge on a reasonable basis could reverse that and that the board should have because there was lack of reasonable evidence. That's just one example. I'd be happy to go into more if Your Honor would like. That's fine. Thank you very much. Thank you. Thank both counsel for a useful argument. Thank you very much. Mr. Ray v. Gonzales is submitted and we will proceed to United States v. Piccolo.
judges: B .Fletcher, Gibson , Berzon